IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KARLA JEFFERY,<br>        Plaintiff<br>v.<br><br>ERIE COUNTY PENNSYLVANIA,<br>et al.,<br>        Defendants. | C.A. No. 23-84 Erie<br><br>District Judge Susan Paradise Baxter |

**MEMORANDUM OPINION**

## I.  INTRODUCTION

### A.  Relevant Procedural History

Plaintiff Karla Jeffery, a fifty-eight year old female resident of Erie County, Pennsylvania, brings this action against Defendants Erie County Pennsylvania ("Erie County"), Erie County Clerk of Records Aubrea Hagerty-Haynes ("Hagerty-Haynes"), and First Deputy Recorder of Deeds David Bradford ("Bradford"), alleging four causes of action arising from her employment with Defendant Erie County: (1) age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"), and the Pennsylvania Human Relations Act, 43 Pa. C.S. §§ 951, *et seq.* ("PHRA"); (2) violation of her rights under the first and fourteenth amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983; (3) retaliation under the ADEA, PHRA, and the First and Fourteenth Amendments; and (4) hostile work environment.[1] As relief for her claims, Plaintiff seeks injunctive relief, compensatory and

---

[1] Plaintiff initiated this action by filing a complaint on March 22, 2023 [ECF No. 1]. She subsequently filed an amended complaint on June 19, 2023 [ECF No. 6]. After Defendants filed a motion to dismiss Plaintiff's amended complaint, Plaintiff filed a second amended complaint [ECF No. 20], which is the operative pleading in this case.

punitive damages, and costs and attorney's fees.

Defendants have filed a motion to dismiss [ECF No. 21], asserting that Plaintiff has failed to "plead factually and legally valid causes of action under all counts of the Second Amended Complaint." (Id. at ¶ 11). Plaintiff has since filed a brief in opposition to Defendant's motion [ECF No. 25]. This matter is now ripe for consideration.

**B.     Relevant Factual History[2]**

Plaintiff began working for Defendant Erie County as senior criminal records clerk in the Clerk of Courts office on or about September 2, 2002. (ECF No. 20, at ¶¶ 11-13). In 2021, the office of Erie County Clerk of Records was going to be open to new election because the incumbent was retiring from the position. (Id. at ¶ 15). Both Plaintiff and her co-worker, Defendant Hagerty-Haynes, ran for the position. (Id. at ¶¶ 16-17). During the campaign, Plaintiff alleges that she never ran or approved of any negative ads against Defendant Hagerty-Haynes, nor did she make any comments that were unprofessional or inappropriate. (Id. at ¶¶ 18-19). She merely "promoted her greater experience, the importance of e-filing, as well as other changes in the Clerk's Office." (Id. at ¶ 20).

On or about September 21, 2021, Defendant Bradford took a picture of a private vehicle bearing Plaintiff's political sign and then proceeded to express his criticism of Plaintiff to the vehicle's owner, telling him that she was a poor candidate and no one in the office wanted to work for her. (Id. at ¶¶ 22-24). At the time, Defendant Bradford was unaware that the vehicle's owner was Plaintiff's brother. (Id. at ¶ 23).

On November 2, 2021, Defendant Hagerty-Haynes was elected as the Clerk of Courts.

---

[2] The factual history set forth herein has been gleaned from the allegations of Plaintiff's second amended complaint [ECF No. 20], which are accepted as true for purposes of considering Defendants' motion, to the extent such allegations are well-pleaded.

(Id. at ¶ 26). Thereafter, on December 6, 2021, Defendants Hagerty-Haynes and Bradford called Plaintiff into a meeting and disciplined her for a number of issues, including failure to follow procedure and unprofessional conduct, which Plaintiff denied, and she was advised that any further issues would result in her immediate termination. (Id. at ¶¶ 27-28, 30). Plaintiff was then "demoted from job assignments that she had held for some time as a senior employee, to assignments that amounted to those of a new hire employee." (Id. at ¶ 29). Plaintiff later learned that "news of her demotion had been made known to the younger members of the department prior to the meeting on December 6, 2021, and prior to Plaintiff being told." (Id. at ¶ 36).

During the meeting of December 6, 2021, there were averments made by Defendants Hagerty-Haynes and Bradford that suggested that a prior meeting that occurred on August 5, 2021, was a disciplinary meeting, although Plaintiff had not received any documents indicating that the prior meeting was disciplinary or "otherwise indicating that she had been disciplined until after the election results," (Id. at ¶¶ 31, 33). Plaintiff alleges that, prior to the election, she "had not been under any threat to her job or alleged to have been in any way performing her duties in an unprofessional manner." (Id. at ¶ 34). Moreover, Christine Fuhrman Konzel, Esquire, who was present at the August 5, 2021 meeting, submitted a rebuttal statement on January 19, 2022, disagreeing that the meeting was disciplinary or that she was acting as Plaintiff's counsel, "clearly contradicting the basis for Defendants' assertions against her." (Id. at ¶ 35).

Plaintiff alleges that, in her prior position as Department Head for the Clerk of Courts, Defendant Hagerty-Haynes would exclude Plaintiff from "various communications and meetings within the office" so that "it was clear to the entire office that she was being singled

out." (Id. at ¶¶ 37-38). Plaintiff's concern over being excluded from group meetings and communications was sent to Defendant Hagerty-Haynes on August 4, 2021; however, she received no substantive response and her "being singled out and isolated ... became worse into the fall of that year." (Id. at ¶¶ 41-42).

Plaintiff generally alleges that she has observed "a clear bias against the older workers in the office in both treatment, assignments, and communication." (Id. at ¶ 47). As examples of such bias, Plaintiff claims that older employees have been "berated" for "errors and issues," while younger employees making the same errors "would not be disciplined at all." (Id. at ¶¶ 48-49). Plaintiff also alleges that recent hires have "all been in their 20's" and one older worker was asked when she was going to retire "in an unpleasant manner and tone." (Id. at ¶¶ 50-52).

## II.   DISCUSSION

### A.   Count I – Age Discrimination under the ADEA and PHRA[3]

"The ADEA prohibits employers from 'discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 643-44 (3d Cir. 2015), quoting 29 U.S.C. § 623(a)(1). A plaintiff in an ADEA case must establish, by a preponderance of the evidence, that age was the "but-for" cause of the complained-of adverse employment action. See Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78 (2009).

Where, as here, a plaintiff relies on circumstantial evidence, courts apply the familiar burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792

---

[3] The Third Circuit has held that "the same analysis used for ADEA is also applied to PHRA claims." Prewitt v. Walgreens Co., 92 F. Supp. 3d 292 n. 4 (E.D.Pa. 2015), citing Fasold v. Justice, 409 F.3d 178, 183-84 (3d Cir. 2005). Thus, Plaintiff's PHRA claim is subsumed in the Court's discussion of her ADEA claim.

4

(1973). See Willis, 808 F.3d at 644 (citation omitted). Under this framework, a plaintiff must first establish a *prima facie* case of age discrimination by pointing to evidence supporting that he/she: (1) is at least forty years old; (2) suffered an adverse employment decision; (3) was qualified for the position in question; and (4) was ultimately replaced by someone sufficiently younger so as to support an inference of discrimination. Id. (citation omitted).

In this case, Defendants argue that Plaintiff has failed to satisfy the second and fourth elements required to plead a *prima facie* case of age discrimination. In particular, Defendants assert that "Plaintiff does not specify an adverse employment action on account of her age, and she does not allege that she was replaced in her job or that her job duties were materially changed in favor of someone younger than her." (ECF No. 22, at pp. 5-6). The Court will address each of these elements in turn.

### 1. Adverse Employment Action

An adverse employment action sufficient to state a claim of age discrimination involves "a significant change to employment status, such as hiring, firing, failing to promote, reassignment or a decision causing significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998); Durham Life Ins. Co. v. Evans, 166 F.3d 139, 153 (3d Cir. 1999). It must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004) (internal quotation marks omitted). "Although direct economic harm is an important indicator of a tangible adverse employment action, it is not the sine qua non. If an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a tangible adverse employment action may be found." Evans, 166 F.3d at 153 (citation omitted).

5

Here, Defendants argue that "[a]s alleged, the Plaintiff has remained in the same senior clerk job she has held for years, without any reduction in her salary or status, nor has she been demoted to a lower position or otherwise suffered a tangible adverse employment consequence...." (ECF No. 22, at p. 6). Thus, Defendants assert that Plaintiff's allegations of adverse action are vague and conclusory. The Court disagrees.

Plaintiff has specifically alleged that she was "demoted from job assignments she had held for some time as a senior employee, to assignments that amounted to those of a new hire employee." (ECF No. 20, at ¶ 29). In addition, Plaintiff alleges that she has been excluded from "meetings and communications within the office" to the point that it has become clear to her co-workers that she is "being singled out." (Id. at ¶¶ 37-38). As a result, Plaintiff claims that it is "extremely difficult for [her] to perform her job in a consistent and effective manner, given that she is not always updated immediately with changes in the protocol or other substantive changes in the office." (Id. at ¶ 44). Though far from conclusive, these allegations are sufficient at the pleading stage to assert a tangible adverse employment action for purposes of establishing a *prima facie* case of age discrimination.

### 2.    **Inference of Age Discrimination**

Defendants argue that Plaintiff has failed to satisfy the fourth element of her *prima facie* case because she "does not identify any younger co-worker in the Office of the Clerk of Records who is similarly situated in their employment duties and supervision, and the manner in which they were treated differently than her." (ECF No. 22, at p. 7). However, Defendants substantially overstate the requirements of stating a *prima facie* case at the pleading stage. "[T]he *McDonnell Douglas* framework does not mandate that a plaintiff *prove* a *prima facie* case of age discrimination in order to survive a motion to dismiss." Smith v. DeJoy, 2022 WL

6

16950447, at *4 (W.D. Pa. Nov. 15, 2022), citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-11 (2002). Instead, "[s]he must allege enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." Id. Plaintiff has done so here.

Plaintiff alleges that she "is able to cite multiple examples of errors and issues that she and other older employees have been berated for, that younger employees committing the same errors have been treated differently" and would often "not be disciplined at all." (ECF No. 20, at ¶¶ 48-49). Plaintiff also alleges that "recent hires have all been in their 20's to the best of her understanding" and that she has been being given assignments usually given to persons who are new hires, thus inferring that more responsibility is being given to substantially younger employees. (Id. at ¶¶ 29, 47, 52). Liberally construing these allegations in Plaintiff's favor, the Court finds that Plaintiff has adequately alleged less favorable treatment in comparison to younger similarly situated employees to satisfy the fourth element of her *prima facie* claim of age discrimination at the pleading stage.

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's age discrimination claim for failure to state a *prima facie* case will be denied.

### 3. ADEA and PHRA Claims Against Individual Defendants

Though Plaintiff's age discrimination claim will be allowed to proceed beyond the pleading stage, Defendants argue, and Plaintiff agrees, that individuals cannot be held liable under the ADEA. See Rodrock v. Moury, 379 Fed. Appx. 164, 166 (3d Cir. 2010), quoting Hill v. Borough of Kutztown, 455 F.3d 225, 246 n. 29 (3d Cir. 2006) ("'[T]he ADEA does not provide for individual liability'"); Shick v. Aiello's Café, 2017 WL 3048885, at *2 (W.D. Pa. July 18, 2017) (noting that courts in the Third Circuit have consistently held that individual defendants cannot be held liable under the ADEA). Thus, Plaintiff's ADEA claim against

Defendants Hagerty-Haynes and Bradford will be dismissed, with prejudice.

As for Plaintiff's PHRA claim against said Defendants, the parties agree that the PHRA also does not provide for individual liability, except that a claim of individual liability may be maintained against persons who "aid, abet, incite, compel or coerce the doing of any act declared ... to be an unlawful discriminatory practice..." 43 P.S. § 955(c). In this regard, Defendants assert that the second amended complaint "contains no allegations that either individual defendant aided, abetted, incited, compelled, or coerced any discriminatory conduct of the employer...." (ECF No. 22, at p. 8). However, Plaintiff alleges that the purported discriminatory actions against her occurred in close proximity to two separate meetings she had with the individual Defendants, in August and December 2021. These meetings allegedly resulted in disciplinary action being taken against Plaintiff, which allegedly precipitated much of the discriminatory conduct of which she complains. So, it may be said that Plaintiff has alleged that the individual Defendants aided, abetted, incited, compelled and/or coerced the discriminatory conduct at issue. Though such allegations are far from dispositive, they are minimally sufficient to allow Plaintiff's PHRA claims to stand against Defendants Hagerty-Haynes and Bradford at the pleading stage.

### B.   Count II – First and Fourteenth Amendment Claims

Plaintiff alleges that she was demoted and disciplined because of her political affiliation, in violation of her right to belief and association under the First and Fourteenth Amendments, and because of her speech as a citizen on matters of public concern and her decision to run for office, in violation of her rights to free speech and to petition the government under the First and Fourteenth Amendments. (ECF No. 20, at ¶¶ 62-63). Defendants seek to have these claims dismissed, arguing that the Second Amended Complaint "does not identify or plead

8

constitutionally-protected political activity that resulted in retaliation, statements made as a citizen on an issue of public concern, or a petition to government." (ECF No. 22, at p. 10). Each of Plaintiff's constitutional claims will be addressed in turn.

### 1. Discrimination Based on Political Affiliation

The Supreme court has long recognized the principle that "public agencies may not hire, transfer, promote, or discharge public employees based on their political affiliations unless their work requires political allegiance." Robertson v. Fiore, 62 F.3d 596, 599 (3d Cir. 1995), citing Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990); Branti v. Finkel, 445 U.S. 507 (1980); Elrod v. Burns, 447 U.S. 347 (1976). "This principle flows from the constitutional prohibition against discharging public employees on account of their speech regarding issues of public concern." Robertson, 62 F.3d at 599.

To make out a *prima facie* case of discrimination based on political affiliation, a public employee must show that: (1) the employee works for a public agency in a position that does not require a political affiliation; (2) the employee was engaged in constitutionally protected conduct; and (3) the employee's political affiliation was a substantial or motivating factor in the adverse employment decision. Stephens v. Kerrigan, 122 F.3d 171, 176 (3d Cir. 1997) (citations omitted).

Here, it is beyond dispute that Plaintiff is a public employee working in a position that does not require political affiliation. Thus, the first prong of Plaintiff's *prima facie* case has been established. As to the remaining two prongs, Defendants argue that Plaintiff's allegations "do not identify specific, constitutionally-protected political actions or affiliation that she engaged in which the Defendants violated, or the political affiliation right which she was deprived of exercising." (ECF No. 22, at p. 12). The Court disagrees.

Plaintiff alleges that she engaged in constitutionally protected conduct when she ran for the office of Clerk of Records in opposition to Defendant Hagerty-Haynes. This is sufficient to satisfy the second prong of Plaintiff's *prima facie* case at the pleading stage. As to the third prong, Plaintiff alleges that, approximately one month after Defendant Hagerty-Haynes defeated Plaintiff and was elected Clerk of Records, Plaintiff was called into a meeting with Defendant Hagerty-Haynes and Bradford, which resulted in her being demoted in the type of job assignments she received and being threatened with termination. In addition, Plaintiff alleges that, after the primary election in which Plaintiff initially ran against Defendant Hagerty-Haynes, she was excluded from various meetings and communications within the office, which hindered her ability to do her job. These allegations establish a temporal nexus between Plaintiff's constitutionally protected conduct of running for office and the alleged disciplinary actions, from which it may be inferred that Plaintiff's political affiliation was a substantial or motivating factor in the adverse employment decisions at issue. Thus, Plaintiff has satisfied her burden of pleading the third prong of her *prima facie* case.

Based on the foregoing, Defendants' motion to dismiss Plaintiff's First Amendment claim of discrimination based on political affiliation will be denied.

### 2. Discrimination Based on Speech Regarding Issues of Public Concern

"The First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 547 U.S. 410, 417 (2006) (citations omitted). To determine whether a public employee's free speech right has been violated, the first inquiry is whether the employee was speaking as a citizen on matters of public concern. Id. at 418. If the answer is no, then the employee has no First Amendment cause of action based on the employer's reaction to her speech. Id. If the answer is yes, then the

possibility of a First Amendment claim arises, unless "the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." Id., citing Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty., 391 U.S. 563, 568 (1968). "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively. Id., citing Connick v. Myers, 461 U.S. 138, 147 (1983).

Here, Defendants argue that Plaintiff has failed to allege that she spoke as a citizen on matters of public concern, because the "only 'speech' which Plaintiff references in the Complaint is her expression of 'concern over the lack of inclusion and communication' that she sent to Defendant Hagerty-Haynes on August 4, 2021." (ECF No. 22, at p. 13). Since this expression was made by Plaintiff in her capacity as a public employee, rather than as a citizen, and relates only to her private concerns, Defendants argue that Plaintiff has failed to establish a First Amendment claim. Id., citing Garcetti, 547 U.S. at 424 (holding that expressions by public employees made pursuant to their job duties "do not create a constitutional cause of action"). However, Defendants have misinterpreted Plaintiff's claim.

Plaintiff's claim of protected speech is not based on her interoffice communications but is, instead, based upon her running for public office, which has been recognized as the equivalent of constitutionally protected speech regarding a matter of public concern. See Phillips v. City of Dallas, 781 F.3d 772, 778 (5th Cir. 2015) (upholding district court's finding that "becoming a candidate for political office is within the First Amendment's ambit" and, thus, "constitutes speech on a matter of public concern"); Castine v. Zurlo, 756 F.3d 171, 176 (2d Cir. 2014) (finding that the "act of running for public office is a form of speech that is

protected by the First Amendment"). See also Lane v. Franks, 573 U.S. 228, 241 (2014) ("Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public") (internal quotations omitted).

Based on the foregoing, the Court finds that Plaintiff has sufficiently alleged that she engaged in speech as a citizen on matters of public concern. Since Defendants have asserted no other basis for dismissing this claim, their motion to dismiss such claim will be denied.

### 3. Discrimination Based on Right to Petition

"[T]he Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." Borough of Duryea, PA. v. Guarnieri, 564 U.S. 379, 388 (2011). "A petition conveys the special concerns of its author to the government and, in its usual form, re-quests action by the government to address those concerns." Id. at 388-89. A petition that "involves nothing more than a complaint about a change in the employee's own duties" does not relate to a matter of public concern and accordingly "may give rise to discipline without imposing any special burden of justification on the government employer." Id. at 399 (citation omitted). "The right of a public employee under the Petition Clause is a right to participate as a citizen, through petitioning activity, in the democratic process." Id.

Defendants argue that Plaintiff has failed to allege a cognizable claim under the Petition Clause because she does not allege that she filed any petition or grievance other than her private statement of concern expressed to Defendant Hagerty-Haynes involving her conditions of employment. Defendants are correct that such a "petition" does not fall within the purview of

the Petition Clause. Though Defendants may be misinterpreting the basis for Plaintiff's right to petition claim, Plaintiff has failed to respond to or oppose Defendants' arguments. Thus, Defendants' motion to dismiss Plaintiff's right to petition claim will be granted.

### C.     Count III – Retaliation

Plaintiff asserts a claim of retaliation under the ADEA, PHRA, and the First Amendment.

To make out a *prima facie* retaliation claim under either the ADEA or PHRA, the plaintiff must show "'(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" Culler v. Sec'y of U.S. Veterans Affairs, 507 Fed. Appx. 246, 250 (3d Cir. 2012), quoting Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002)

"'To establish a First Amendment retaliation claim, a public employee must show that (1) his speech is protected by the First Amendment and (2) the speech was a substantial or motivating factor in the alleged retaliatory action, which, if both are proved, shifts the burden to the employer to prove that (3) the same action would have been taken even if the speech had not occurred.'" Munroe v. Central Bucks School Dist., 805 F.3d 454, 466 (3d Cir. 2015), quoting Dougherty v. School District of Phila., 772 F.3d 979, 986 (3d Cir. 2014).

Here, Defendants make two arguments in favor of dismissing Plaintiff's retaliation claims. First, Defendants argue that Plaintiff's retaliation claims cannot stand because the "duplicative" age discrimination and First Amendment claims are not cognizable. This argument is essentially moot, however, as the Court has already determined that Plaintiff's age discrimination and First Amendment claims will survive Defendants' motion to dismiss.

Second, Defendants argue that Plaintiff's allegations fail to state a cause of action for retaliation because she "makes no claim that she was deterred from exercising her rights because of retaliation, as required under the law" (ECF No. 22, at p. 21). In support of this argument, Defendants cite the Third Circuit Court's decision in Thomas v. Independent Twp., 463 F.3d 285, 296 (3d Cir. 2006); however, this decision is inapposite, because the plaintiff in Thomas was a private citizen, not a public employee like Plaintiff in this case. The Third Circuit has recognized that, under the First Amendment, the elements for stating a *prima facie* case of retaliation for a private citizen are different from the elements required of a public employee. See Falco v. Zimmer, 767 Fed. Appx. 288, 298-99 (3d Cir. 2019). In particular, in the case of a private citizen, the plaintiff must show, *inter alia*, that the retaliatory action was sufficient to deter a person of ordinary firmness from exercising his rights. Id. at 298 (citation omitted). This element is not required of a public employee. Id. at 299 (citations omitted). Moreover, such an element is absent from the requirements for stating a *prima facie* case of retaliation under the ADEA and PHRA, as well.

Thus, Defendants' grounds for dismissal of Plaintiff's retaliation claim are without merit and their motion to dismiss such claim will be denied.

### D. Official Capacity Claims Against Individual Defendants

Defendants have moved to dismiss Plaintiff's official capacity claims against Defendants Hagerty-Haynes and Bradford based, *inter alia,* on Eleventh Amendment immunity.

It is well settled that suits for damages by individuals against state officers acting in their official capacities are barred by the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159, 165-67 (1985) (holding that claims for damages against a state officer acting in his official capacity are barred by the Eleventh Amendment). As Court Administrators in Pennsylvania,

Defendants Hagerty-Haynes and Bradford are included within the State judicial system, 42 Pa. C.S. § 1905(a), and are, thus, entitled to Eleventh Amendment immunity to the extent Plaintiff seeks monetary damages. Arndt v. Bortner, 2014 WL 5425423, at *2 (M.D. Pa. Oct. 22, 2014), citing Conklin v. Anthou, 495 Fed. Appx. 257, 263 (3d Cir. 2012). Nonetheless, Eleventh Amendment immunity generally does not bar official capacity claims to the extent they seek prospective injunctive relief, see Laskaris v. Thornburgh, 661 F.2d 23, 26 (3d Cir. 1981) citing Ex parte Young, 209 U.S. 123 (1908). Thus, Plaintiff's official capacity claims against Defendants Hagerty-Haynes and Bradford will be dismissed, but only to the extent such claims seek monetary damages.

### E. Hostile Work Environment

Defendants have moved to dismiss Plaintiff's hostile work environment claim, initially arguing that, since the Third Circuit has not expressly allowed a hostile work environment claim under the ADEA, such a claim is not actionable. However, though Defendants are correct that the Third Circuit has not "formally recognized a cause of action for hostile work environment under the ADEA," Lyles v. Philadelphia Gas Works, 151 Fed. Appx. 169, 171 n.3 (3d Cir. 2005), district courts within the Third Circuit have commonly recognized the same. See, e.g., Briggs v. Temple Univ., 339 F.Supp.3d 466, 503 (E.D. Pa. 2018); Johnson v. Phila. Hous. Auth., 218 F.Supp.3d 424, 438 (E.D. Pa. 2016); Lambert v. Xpress Global Sys., Inc., 2016 WL 1639668, at *3 (W.D. Pa. Apr. 26, 2016); Mauriello v. Sears Roebuck & Co., 2014 WL 67312, at *3 (D.N.J. Jan. 8, 2014). In addition, "'[t]he Pennsylvania courts have held that hostile work environment claims are cognizable under the PHRA.'" Dreshman v. Villa, 733 F.Supp.2d 597, 611 (W.D. Pa. 2010), quoting Hubbell v. World Kitchen, LLC, 688 F.Supp.2d 401, 419 (W.D. Pa. 2010). Thus, this Court will proceed on the premise that a hostile work environment claim is

actionable under both the ADEA and PHRA.

It has been commonly observed that "[a] hostile work environment claim for age-based discrimination under the ADEA [and PHRA] is analyzed under the same standards as a Title VII hostile work environment claim." Lambert, at *3; Briggs, 339 F.Supp.3d at 506; Johnson, 218 F.Supp.3d at 437; Dreshman, 733 F.Supp.2d at 611. "Accordingly, in order to state a facially plausible hostile work environment claim under the ADEA, a complaint must allege: '(1) the employee suffered intentional discrimination because of [her age]; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected [her]; (4) the discrimination would detrimentally affect a reasonable person of the same age in that position; and (5) the existence of *respondeat superior* liability.'" Lambert, at *3, quoting Huston v. Proctor & Gamble Paper Products Corp., 568 F.3d 100, 104 (3d Cir. 2009). Furthermore, "[t]o determine whether the perceived conduct is pervasive and regular enough to violate the ADEA, the Court must consider all of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id., quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

Here, Defendants contend that Plaintiff's hostile work environment claim must be dismissed because the second amended complaint fails to describe "severe or pervasive" conduct. However, "Courts in this Circuit have... 'shown a reluctance to dismiss a complaint at the 12(b)(6) stage when the primary challenge to the hostile work environment claim is whether or not the conduct in question is severe [or] pervasive.'" Booker v. National R.R. Passenger Corp., 880 F.Supp.2d 575, 582 (E.D. Pa. 2012), quoting Grasty v. World Flavors, Inc., 2011 WL 3515864, at *9 n.2 (E.D. Pa. Aug. 11, 2011); Fedder v. Bloomsburg University of

Pennsylvania, 2024 WL 580552, at *3 (M.D. Pa. Feb. 13, 2024) (collecting cases). Our own district court has noted that:

> The resistance of district courts to dismiss claims at the 12(b)(6) stage makes good sense in light of the fact that the determination of what constitutes 'severe or pervasive' does not lend itself to a 'mathematically precise test, but instead requires that a court look to the totality of circumstances. This inquiry is necessarily fact-intensive; thus, summary judgment provides a more appropriate vehicle to resolve these issues, as the parties at this stage have had an opportunity to conduct discovery and develop their claims.

Long v. Pizza Hut (Store # 635008), 2003 WL 23019186, at *4 (W.D. Pa. Nov. 5, 2003), citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23-24 (1993). See also Fedder, 2024 WL 580552, at *3 ("[T]he question of whether the allegations contained in [the Second Amended Complaint] are ultimately sufficient to prove that the discrimination was 'severe or pervasive' is [therefore a] question properly reserved for summary judgment and trial") (quotation omitted).

Though the conduct alleged by Plaintiff in her second amended complaint may ultimately prove insufficiently "severe or pervasive" to have caused a hostile work environment under either the ADEA or PHRA, the Court finds that Plaintiff's allegations are sufficient at the pleading stage to overcome Defendants' motion to dismiss.

### F. Punitive Damages

Finally, Defendants move for the dismissal of Plaintiff's request for punitive damages against the individual Defendants in their individual capacities.

In general, "punitive damages may be pursued against individual state actors upon proof that their conduct was 'motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Braunstein v. Paws Across Pittsburgh, 2019 WL 1458236, at *12 (W.D. Pa. Apr. 2, 2019), quoting Smith v. Wade, 461 U.S. 30, 56 (1983); Keenan v. City of Phila., 983 F.2d 459 (3d Cir. 1992).

Viewed in the light most favorable to Plaintiff, the facts contained in the second amended complaint plausibly demonstrate conduct on the part of the individual Defendants that could justify an award of such damages upon further development of the factual record. Thus, Plaintiff's request for punitive damages will not be dismissed at this stage of the litigation.

An appropriate Order follows.